## HOWE's HEIRS v. ELIAS ROGERS.

1—When there has been a part performance of a parol contract for the sale of land, and the vendee has been let into possession and has made actual improvements upon it, with the knowledge and acquiescence of the vendor, the contract is not within the reason of the statute of frauds, and this court, as well as most of the courts of the American States, will uniformly compel a specific execution of the contract.

2—In 1846, plaintiff purchased by parol contract a tract of land from defendants' ancestor, who received the purchase money and delivered possession to the plaintiff, who proceeded to make valuable improvements on the land. No patent having issued to the vendor, the agreement provided that he should make title to the plaintiff as soon as patent should issue. Soon after making the contract the vendor died, and in 1849 patent for the land issued to his heirs. In 1848 the plaintiff removed out of the State, but left the land in the possession of his tenant, who, without

plaintiff's knowledge, abandoned the possession in 1850, when the vendor's heirs took possession, claiming under their patent, and retained the land until suit was brought against them by the plaintiff in 1856. *Held*, that the plaintiff is entitled to specific performance of the parol contract; that the defendants took the legal title as trustees for the plaintiff, and can not debar his equity by means of the statute of limitations, which is not applicable to the case; and that there has not been such *laches* as should preclude relief to the plaintiff.

3—If, in taking the deposition of two witnesses at the same time, the same interrogatories and cross-interrogatories be put to both of them, and one of them simply adopts and swears to the answers made by the other, the answers so made are the answers of both and of each of them; and are admissible in evidence as such.

APPEAL from Ellis. Tried below before the Hon. N. M. Burford.

The material facts of this case are clearly stated in the opinion of the court.

*E. B. Turner* and *Hawkins & Kimble*, for the appellants. The plea of limitations is in substantial compliance with the law, and that is all the law requires; and a party can not object to the introduction of testimony under a good cause of action badly pleaded, but must except specially. (Boynton v. Tidwell, 19 Tex., 121; Black v. Drury, 24 Tex., 291.)

The plaintiff alleged regular chain of title from the State in the defendants, and it was unnecessary for defendants to charge over again a fact admitted by plaintiff. (Bourke v. Vanderlip, 22 Tex., 222; Grimes v. Hagood, 19 Tex., 249.)

There was no trust in the case. But assuming, as the appellee does, that there was, and that notice to the plaintiff was necessary in order to set the statute in operation, then we say that the taking of the possession by the defendants was such notice, and gave immediate right of action. (Sneed v. Houston, 15 Tex., 307; Keaton v. Greenwood, 8 Georgia, 97; Zeller's Lessees v. Eckhart, 4 Howard, 294; Gonzales v. Hoodin, 6 S. & R., 126; Smith v. Fly, 24 Tex., 351, 352.)

If there was any trust, then it was not that character of trust as the law contemplates as not coming within the statute of

limitations. (Stuart v. Milish, 2 Atk. 610; 1 Madd. Tr., 359; Prewit v. Buckingham, 20 Miss., 98; Kane v. Bloodgood, 7 J. Ch. Rep., 109; Tinnin v. Mebane, 10 Tex., 252.)

The case of Pearson v. Burditt, 26 Tex., 157, decides this point, and must be held to establish the correct doctrine that where the party pleading either of our statutes of limitation shows by his evidence that he is within the letter of the law mentioned in either of the sections, that those statutes will protect him. The inquiry, then, in this case should have been:

1. Are the defendants in possession of the premises? This was charged in the petition and admitted in the answer.

2. Do the defendants hold, by regular chain of title, from the State? This was also alleged in the petition, and asserted in the answer. So far, then, no proof was necessary.

3. Had the defendants held three years' adverse possession of the lands previous to the commencement of the suit? This the defendants offered to prove, and the court refused to hear the proof, as appears by the defendants' bill of exceptions. This proof, if admitted, would have made the case of the defendants full and perfect.

*R. Q. Mills*, for the appellee. The rule laid down for actions for specific performance is, that ten years is the shortest time that will bar the action. In this case the title was to be made when the patent issued. It issued October 10th, 1849, and, consequently, the action could not be barred until 1859; and the suit was brought in 1856. (4 Texas, 459; Id., 484; 15 Texas, 570; 17 Texas, 10; Meigs R., 358.)

Howe was trustee for Rogers, and could not claim the land by adverse possession, even if the pleas were sufficient, without notice to his beneficiary of the character of his possession. (11 Texas, 620; 3 Texas, 476; 15 Texas, 4; 20 Texas, 711; 12 Texas, 195; 3 Texas, 273; 4 Howard, 289; Angell on Limitations, 403, 482.)

Lindsay, J.—The judgment in this case is the enforcement of the specific performance of a parol contract for the sale of

land.   In defense of the action for the specific performance of the parol contract, the statute of frauds is relied upon in the answer.

Wherever there has been a part performance of the contract, accompanied by possession, and actual improvements have been made upon the land by the vendee, with the knowledge and acquiescence of the vendor, this court, as well as most of the courts of the American States, have regarded such parol contract as not within the reason of the statute, and have uniformly compelled its specific execution.   This rule is virtually recognized in the case of Garner v. Stubblefield, 5 Tex. R., 552; and is certainly and distinctly so recognized in the cases of Dugan's heirs v. Colville's heirs, 8 Tex. R., 126; Ottenhouse v. Burleson's administrators, 11 Tex. R., 87; Taylor v. Ashley, 15 Tex. R., 50, and Bracken v. Hambrick & Co., 25 Tex. R., 408.   From a knowledge of this historical series of opinions by this court, in full harmony with the adjudications of other tribunals upon similar statutes, there ought to be no longer any question that there may be exceptional cases against the positive and express language of the statute.

The question here, then, is: Is this one of those exceptional cases which equity relieves against the positive inhibitions of the statute ?

This depends upon the pleadings, and the proof adduced upon the trial.   The petition does not set out that the contract was in parol.   But the answer denies that there was any memorandum in writing of the contract of sale, signed by the party to be charged therewith, and set up the statute of frauds against the right of the plaintiff to recover.

The proof shows that in January, 1846, the appellee made a verbal contract with the ancestor of the appellants for the purchase of the south half of the 640 acre headright of the ancestor, at the price of four hundred dollars, which price was paid in property, and accepted at the time of the bargain : and that the appellee was put into immediate possession of the moiety, so contracted for; and upon which he proceeded to

make valuable improvements. The patent not having then been issued by the State, the agreement was that the deed was to be made to the purchaser as soon as it did issue. The patent was not issued till the 10th day of October, 1849, and then issued to the heirs of the vendor, he having departed this life in the latter part of the year 1846. According to the proof, the purchaser continued in possession, by himself or his tenant, enjoying the use and making improvements until the year 1850, when the heirs of the vendor claimed to hold, and did hold the land, by virtue of the patent for the whole head-right. With this proof, according to the well settled doctrine of all courts which have been called upon to construe this and similar statutes, as well as of all jurists who have written upon them, an equity is raised in favor of the party seeking a specific performance.

Such a case comes not within the scope of the mischief intended to be guarded against by the statute. And unless the equity thus raised can be foiled on some other ground than a reliance upon the statute of frauds, the relief was rightfully granted. The appropriate, and the only equitable relief, that could have been afforded, in such a state of case, was the compelling a specific performance of the contract; for the parties could not be placed *in statu quo*, nor could there be any adequate compensation in damages.

To evade the force of this conclusion, however, it is insisted that the terms of the agreement were uncertain and vague, not plainly and distinctly shown; and it was not made manifest that the part performance had reference to the terms of the agreement. It is very true all these things are necessary. It is conceived that it was plainly and distinctly shown by the proof that the purchase was made of the south half of the 640 acre headright of the vendor, with its locality defined, at the price of four hundred dollars, into the possession of which, the vendee was immediately let by the vendor; and that the vendor was to make title as soon as the patent issued. These terms seem to be plain, clear and explicit. And the part per-

formance—the payment of the purchase money, the settlement and improvements upon the identical half of the headright, and the enjoyment of the use free of charge—had direct and unequivocal reference to the terms of the agreement, as established by the proof.

It is further insisted, the terms of the parol agreement are not fully established by the proof, because one of the two witnesses, whose testimony were taken to the same interrogatories and cross-interrogatories, simply adopted and swore to the answers made by the other. The same questions and cross-questions were asked of each, and if the facts are reduced to writing by one, in the presence of the other, before the same examining officer, and their knowledge of the facts is identical, no reason can be perceived, either in law or in judicial policy, why the labor should be repeated of reducing the answers again to writing, when both are willing to swear to the same deposition. The answers are the answers of both, and of each, and each may be held criminally responsible upon them for perjury, if perjury should be committed by both or either of them. A reason may be found in an oral examination for disjoining the answers, because there the interrogator has the liberty and the opportunity of varying the mode of investigation. Moreover, no exception and notice seems to have been filed to give the opposite party an opportunity to retake the deposition, if it was defectively taken. Hence, upon the trial, the parol agreement was established by two witnesses, against the partially conflicting statement of one witness, whose testimony was confirmatory of the other two in several essential particulars. The jury, being the judges of the weight of the testimony, had ample ground to sustain their verdict. In such cases, courts are disinclined to disturb their verdict, unless it be palpable that gross and wanton injustice has been done.

Another defence, relied upon to defeat the enforcement of this parol contract, was the statute of limitations. It is a character of case in which the statute of limitations is wholly inapplicable. The parol agreement being established, with an

equity which relieves it from the inhibition of the statute of frauds; and the purchase money having been paid, the vendor, or his legal representatives, held the land *in trust* for the purchaser, and could not repudiate that trust. It was a trust imposed upon the conscience of the party by operation of law. As soon as the contract was made, and the acts performed by the parties to render it an exception to the statute, the vendor became the trustee for the vendee, and the land was subject to be devised by the will of the vendee, or to descend to his heirs by operation of law. This being the relation of the parties, there could be no disseisin, abatement, nor intrusion, as to this trust estate, by the trustee, who held the legal title, while the equity was in the vendee. It is not upon the statute of limitations, properly so called, therefore, he can rely to defeat the equity. It is another and a different principle which must be invoked, if an adverse claim is relied upon to work an equitable ouster of the rightful claimant. It must be such *laches* as, independently of the express provisions of the statute, would bar the relief in equity from *mere lapse of time* which *lapse of time* courts of equity may fix upon and adopt, in analogy to the law, or may disregard, according to the special circumstances of each particular case. If, in this case, the lapse of time, in analogy to the law, should be adopted, this court, in the cases of Galen Hodges v. Moses Johnson's Ex'r., etc., 15 Tex. R., 570, and Vardeman *et al.* v. Lawson *et al.*, 17 Tex. R., 10, has already fixed upon the period of *ten years* as necessary to bar the equitable right. This period was no doubt fixed upon by this court in similitude to the English equity system, which, in following the law, in cases in which it might act in analogy to the law, adopted the longest period prescribed to bar a possessory action at law—such as twenty years to the action of ejectment—to defeat a recovery, where the party had slept upon his rights, or had been guilty of *laches*. This is an equitable rule in the assertion of claims to land, where those claims are based exclusively upon equitable principles.

Observe how all the facts of this case quadrate with, and

accommodate themselves to, the principles which must always prevail when the *laches* of the complaining party is relied upon as a defense.   The contract was made in January, 1846.   The vendor died in the fall of 1846.   The conveyance was to be made when the patent issued   The patent issued the 10th of October, 1849, to the heirs of the vendor.   The purchaser was in possession of the land, by himself, or his tenant, from the date of the purchase, until about the beginning of the year 1850.   The purchaser had moved to the State of Mississippi in 1847, or 1848, leaving his tenant in possession.   The purchaser alleged in his petition, which was not controverted, he was not aware, until a few months before the institution of his suit, that his tenant had abandoned his possession.   The suit was brought in November, 1856, about seven years after the emanation of the patent.   From this state of facts, no such *laches* is perceived as would justify the sustaining of the defense.   It would be against good conscience to suffer it to prevail.

The judgment is affirmed.

Affirmed.